**SIGNED this 7 day of July, 2014.**



**John T. Laney, III**
**Chief United States Bankruptcy Judge**

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF GEORGIA**
**COLUMBUS DIVISION**

| | | |
|---|---|---|
| In re: | * | Chapter 7 |
| Alicia Lee Gregg, | * | Case Number:  11-40125jtl |
| | * | |
| Debtor, | * | Adversary Proceeding |
| | * | Number:  11-4047 |
| Walter W. Kelley, Trustee, | * | |
| | * | |
| Plaintiff, | * | |
| Vs. | * | |
| | * | |
| Dennis D. Speciale, | * | |
| | * | |
| Defendant. | * | |

**Memorandum Opinion**

This matter is before the Court on the Trustee's Motion for Summary Judgment ("Motion"). The Court heard oral arguments on the Motion on May 2, 2014, in Columbus, Georgia. All parties appeared via teleconference. For the reasons set for below, the Court grants the Trustee's Motion for Summary Judgment.

1

I.  **Procedural History**

On February 11, 2011, Alicia Gregg (herein "Debtor" or "Gregg") filed a Chapter 7 Bankruptcy Petition in this Court. (Case No. 11-40125-JTL, ECF No. 1). This Court entered an order granting Gregg a discharge on June 20, 2011. (Case No. 11-40125-JTL, ECF No. 20). On October 13, 2011, the Trustee filed an adversary proceeding to avoid certain transfers of real property made by Gregg to her son Dennis Speciale (herein "Defendant" or "Speciale"). (Adv. Proc. No. 11-04047, Trustee's Complaint to Avoid Transfers ECF, No. 1). The Trustee alleges that the Debtor transferred her interest in certain real property located in Marion County, Georgia, to Speciale in violation of Georgia's Uniform Fraudulent Transfers Act, as set forth in O.C.G.A. § 18-2-70 *et seq.* The parties conducted discovery, and on January 14, 2013, the Trustee filed his first Motion for Summary Judgment. (First Mot. Summ. J., ECF No. 37). On July 2, 2013, this Court issued a Memorandum Opinion and Order denying the Trustee's First Motion for Summary Judgment. (Mem. Op., ECF No. 52, 53).

Subsequently, the Court granted the Trustee's Motion to Reopen Discovery and, following the close of the renewed discovery period, the Trustee filed the present motion, his second Motion for Summary Judgment (the "Motion"). (Mot. Summ. J., ECF No. 74). Pursuant to the local rules, the Trustee filed a Statement of Uncontested Facts. (Trustee Stmt. of Uncontested Facts, ECF No. 77). Under Local Bankruptcy Rule 7056-1(b), the Defendant is given 21 days in which to respond to the movant's Statement of Uncontested Facts. Pursuant to Local Bankruptcy Rule 7056-1(c), failure to do so is deemed an admission of the material facts set forth in the statement. Here, the defendant, Speciale, failed to timely respond to the Trustee's Statement of Uncontested Facts.[1]

---

[1] The Court notes that Speciale did file a response to the Trustee's Statement of Uncontested Facts. However, the response was not filed within the time limit set forth in the Local Bankruptcy Rules and therefore cannot be considered by the Court. The Court is not unsympathetic to difficulties faced by *pro se* debtors when a case

2

Therefore, the Court will accept the material facts contained in the Trustee's Statement of Uncontested Facts. On May 2, 2014, the Court heard oral argument on the Motion and now makes the following findings of fact and conclusions of law.

**II.    Factual Background**

i.  *Marion County Property Transfers*

In 1996 the Debtor, Alicia Gregg, purchased a forty (40) acre tract of land and home located at 174 Buffalo Road ("174 Buffalo Road"), Marion County, Georgia, for a purchase price of $137,000.00. (Alicia Gregg Dep. Ex. 22, Feb. 7, 2014). In 1998 Gregg purchased an additional ten acre tract of land and home located at 191 Buffalo Road ("191 Buffalo Road"), Marion County, Georgia, for a purchase price of $65,000.00. (Gregg Dep. Ex 22). By quit claim deeds dated November 21, 2001, Gregg transferred both the 174 and 191 Buffalo Road properties to her son, Dennis Speciale. (Gregg Dep. Ex. 24). Speciale later transferred 174 and 191 Buffalo Road back to Gregg by deeds dated February 18, 2005. (Gregg Dep. Ex. 24). Again, in 2007 Gregg transferred both the 174 and 191 Buffalo Road properties back to Speciale. (Gregg Dep. Ex. 9, 12). This time the transfers were made by quit claim deeds dated December 7, 2006, and February 16, 2007, that were recorded in the Deed Book of the Marion County Clerk's office on November 19, 2007.[2] (Gregg Dep. Ex. 9, 12). It is the transfers recorded on November 19, 2007, which have given rise to the instant case.

---

involves litigation. Especially when having to stay informed as to filing deadlines and local rules. It seems apparent to the Court however, that Speciale was aware of the Local Rule requiring a response within 21 days since Speciale timely filed a response to the Trustee's First Motion for Summary Judgment and accompanying Statement of Uncontested Facts. (Def. Response to Trustee's Stmt. of Uncontested Facts, ECF. No. 39)

[2] The 174 Buffalo Road property was transferred from Gregg to Speciale by quit claim deed prepared by Gregg and dated February 16, 2007, and recorded in the Marion County Clerk's Office on November 19, 2007.(Gregg Dep. Ex. 12). The property located at 191 Buffalo Road was transferred from Gregg to Speciale by quit claim deed prepared by Gregg and dated December 7, 2006, and recorded in the Marion County Clerk's Office on November 19, 2007. (Gregg Dep. Ex. 9)  Under Georgia law a deed is not effective as against a good faith purchaser, as the Trustee is in

ii.    *Speciale Divorce*

On February 23, 2005, Melisa Speciale, the wife of Dennis Speciale filed a petition for divorce in the Superior Court of Marion County. (Stmt. of Uncontested Facts Ex. A). In the divorce action Melisa Speciale asserted a claim to the properties located at 174 and 191 Buffalo Road.[3] Further, in her *First Amendment to Complaint* Melissa Speciale claimed that Dennis Speciale had transferred marital assets, specifically the 174 and 191 Buffalo Road properties, to Alicia Gregg. (Stmt. Uncontested Facts Ex. C). In response, Dennis Speciale asserted in his *Answer and Counterclaim* that both 174 and 191 Buffalo Road were owned by Dennis Speciale's mother, Alicia Gregg.[4] Not to be left out, Gregg also participated in the Speciale divorce. By way of intervention, Gregg was made a party to the Speciale divorce and asserted her rights to 174 and 191 Buffalo Road. (Gregg Dep. Ex. 21). In her *Motion to Intervene* Alicia Greg asserted that she held fee simple title to 174 and 191 Buffalo Road., and asked that she be declared the fee simple owner of 174 and 191 Buffalo Road. (Gregg Dep. Ex. 21).

In the Speciale divorce, Gregg also filed a *Motion for Summary Judgment* as to the ownership of 174 and 191 Buffalo Road. (Stmt Uncontested Facts, ¶¶ 10-12). In support of her Motion for Summary Judgment in the Speciale divorce Gregg executed and filed a sworn *Affidavit Supporting Intervenor's Motion for Summary Judgment.* (Gregg Dep. Ex. 22). In her affidavit Gregg stated that contrary to what Melissa Speciale claimed, Gregg was, in fact, the owner of both 174 and 191

---

the bankruptcy context, until it is recorded in the deed register of the appropriate county. Here, the effective date for both deeds is November 19, 2007, the date of recording in the records of the Marion County Clerk's office. Thus, although Debtor and Speciale contend that the transfers took place on the dates listed on the deeds, for the purposes of this motion the transfers are deemed to have taken place on the date of recording.

[3] Referring to the 174 and 191 Buffalo Road properties, Melisa Speciale stated that "Plaintiff shows that the parties own two houses located in Marion County, Georgia. . ." (Stmt. of Uncontested Facts Ex. A).

[4] In his response, Speciale stated, "responding to the allegations contained in [Melisa Speciale's Complaint] . . . [Dennis Speciale] shows that the parties do not have ownership of any real property or homes and that the mobile home in which [Melisa Speciale] is now residing is owned and was paid for by . . .Leigh Gregg, who by way of intervention, asserts her legal title and right to possession of said property." (Stmt. Uncontested Facts Ex. B).

4

Buffalo Road. (Gregg Dep. Ex. 22). Gregg also stated that she had purchased both properties and had transferred the properties to her son in 2001 because she did not live in the state and she wanted the properties in his name for "convenience." (Gregg Dep. Ex. 22). In reference to the 2005 transfer of the properties from Speciale back to Gregg, Gregg attested that "[a]t the time my son deeded both tracts back to me, I did not pay him any monies, as it was simply a return of my property to me, which had been placed in his name only for convenience while he was living in this area" and that at the time she was "not aware that any divorce proceedings . . . were imminent." (Gregg Dep. Ex. 22).

In further support of her Motion for Summary Judgment Gregg also filed a "*Statement Required by Rule 6.5 of the Georgia Uniform Superior Court Rules*," in which she stated that the 2001 " transfer of both tracts of land from Gregg to [Dennis Speciale] was done for convenience only." (Gregg Dep. Ex. 24). In that same document, Gregg further stated that "[d]uring the time both tracts of property were held in [Dennis Speciale's] name, GREGG continued to pay the expense for repair and improvements, property taxes, insurance, upkeep, telephone and utility expense[s]." (Gregg Dep. Ex. 24)

Throughout the Speciale divorce, Alicia Gregg and Dennis Speciale emphatically asserted that, regardless of the 2001 transfer from Gregg to Dennis Speciale, both 174 and 191 Buffalo Road had always belonged to Gregg. (Gregg Dep. Ex. 20-24). The Superior Court of Marion County was persuaded by Gregg's assertions and in its *Final Judgment and Decree* in the Speciale divorce found that "[Alicia Gregg] is declared and adjudged to be the fee simple owner of [174 and 191 Buffalo Road] located in Marion County, Georgia." (Stmt. Uncontested Facts Ex. E). The divorce court further declared that "the two quit claims[sic] deeds from [Dennis Speciale] to [Gregg] conveying back to [Gregg] two separate parcels of real property in Marion County, Georgia . . are

5

sufficient to place fee simple title in [Gregg's] name and [Gregg] is . . . the fee simple owner of . . . [174 and 191 Buffalo Road]. . . free of any claim of [Melissa Speciale], either before or after the date of this final judgment and decree." (Stmt. Uncontested Facts Ex. E). Accordingly, on October 25, 2007, title to 174 and 191 Buffalo Road resided in Alicia Gregg.

iii. *Gregg Divorce*

During the pendency of the Speciale divorce, Gregg herself was also involved in a divorce action. On May 27, 2003, Gregg filed a complaint for divorce against Alonzo Gregg in Massachusetts State Court.[5] (Gregg Dep. Ex. 13). As part of the divorce proceedings, the Massachusetts State Court made the following factual findings, which are relevant to the current action. First, the court found that Gregg used the proceeds from the 2002 refinancing of the martial home to pay off the mortgage on the 191 Buffalo Road property. (Gregg Dep. Ex. 19). Second, the court found that Alicia Gregg transferred 174 and 191 Buffalo Road to Speciale on November 21, 2001, which was one day following the separation of Alicia and Alonzo Gregg.[6] (Gregg Dep. Ex. 19). Third, the court found that on February 22, 2005, Dennis Speciale transferred both properties back to Alicia Gregg and that Dennis Speciale asserted no claim to either property in the Gregg divorce. (Gregg Dep. Ex. 19). Finally, the Massachusetts divorce court found that "based on [Dennis Speciale] claiming no interest in the Buffalo Road properties and [Alicia Gregg's] claim under [Dennis Speciale's] divorce action that she has sole interest in the two properties, said properties shall be considered part of the marital estate and subject to equitable division by this Court." (Gregg Dep. Ex. 19).

---

[5] At the time of her divorce Alicia Gregg was a resident of Massachusetts.
[6] The court noted that the 2001 transfer was in consideration of $10.00 "so that the property could be sold," and that Speciale did not give valuable consideration for his interest in the property.

6

Accordingly, the Massachusetts divorce court made an equitable division of the Gregg's marital property, ordering Alicia Gregg to transfer to Alonzo Gregg 100% of 174 Buffalo Road, 20% of 191 Buffalo Road, 100% of a Maui Timeshare and 100% of a parcel of land located in New Mexico. (Gregg Dep. Ex. 18; Stmt. Uncontested Facts, ¶ 16).The divorce ruling also provided that Alonzo Gregg had a lien against Alicia Gregg's 80% interest in 191 Buffalo Road to secured her performance under the divorce judgment. (Gregg Dep. Ex. 18; Stmt. Uncontested Facts, ¶ 17). At the filling of the instant adversary proceeding Alicia Gregg had not transferred any interest in 174 or 191 Buffalo Road to Alonzo Gregg. (Stmt. Uncontested Facts, ¶ 22).

iv.   *Debtor's Financial Condition*

On November 19, 2007, the date of the allegedly fraudulent transfer of 174 and 191 Buffalo Road from Alicia Gregg to Dennis Speciale, Alicia Gregg had total liabilities of approximately $179,000.000. (Gregg Dep. pp 156-160; Stmt. Uncontested Facts, ¶¶ 31-34) These liabilities were primarily composed of approximately $23,000.00 of credit card debt and $156,000.00[7] owed to Alonzo Gregg as a result of the August 21, 2007, divorce judgment. (Gregg Dep. pp 156-160; Stmt. Uncontested Facts ¶¶ 31-34). On that same date, Alicia Gregg had approximately $261,000.00 in assets. This total is comprised of approximately $26,000.00 in bank account balances, $213,000.00 in real estate, and $22,000.00 in personal property.[8] (Gregg Dep. pp 110-154; Stmt Uncontested Facts ¶¶ 29-34).

---

[7] Alonzo Gregg filed a proof of claim in the debtor's underlying bankruptcy in the amount of $187,000.00, which debtor disputed as to the amount of the claim. However, the debtor agreed that Alonzo Gregg's claim as of November 19, 2007, was at least $156,000.00. (Gregg Dep. pp 159-160).

[8] Not included in the calculation of Gregg's assets or liabilities is a home and approximately ten acres, which is located at 174 Buffalo Road, Marion County, Georgia. This property, which was carved out of the original approximately 40 acres at 174 Buffalo Road, is now encumbered by a security deed held by Wells Fargo. This 10 acre carve out is not subject to this current action.

7

v.   *Factual Summary*

In summary, the factual evidence in the record that is relevant to the Court's decision shows that since 1996 Alicia Gregg has been the owner of property located at 191 and 174 Buffalo Road in Marion County, Georgia. In 2001 Gregg transferred title to both properties to her son Dennis Speciale. In 2005, Dennis Speciale transferred both properties back to Alicia Gregg. In 2007, at the urging of Alicia Gregg, a divorce court in Marion County, Georgia, and one in Massachusetts found that Alicia Gregg was at that time and at all times prior to 2007 the owner of 174 and 191 Buffalo Road. On November 19, 2007, Alicia Gregg effected the transfer of both 174 and 191 Buffalo Road to Dennis Speciale by recording two deeds in the records of the Clerk of the Marion County Court.

**III.   Discussion**

i.   Summary Judgment Standard

In dealing with motions for summary judgment, Federal Rule of Civil Procedure 56 is made applicable to adversary proceedings in bankruptcy cases by Federal Rules of Bankruptcy Procedure 7056. Pursuant to Rule 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). An issue of fact is "material" if it affects the outcome of the case under the applicable law. *Redwing Carriers, Inc. v. Saraland Apartments,* 94 F.3d 1489, 1496 (11th Cir.1996). Accordingly, the Court will not consider factual disputes that are irrelevant or unnecessary to the outcome of the case. *Anderson v. Libetrty Lobby, Inc.*, 477 U.S. 242 (1986).

8

The Trustee has brought the current action to set aside, as fraudulent, the November 19, 2007, transfers from Alicia Gregg to Dennis Speciale. Typically, a fraudulent transfer claim is made by a creditor or trustee who seeks to recover property that was wrongfully transferred by the debtor in an attempt to avoid paying a debt. Fraudulent transfers are prohibited by federal law, as codified in 11 U.S.C. § § 544, 548, and by numerous state statutes adopting the Uniform Fraudulent Transfer Act.[9] Georgia prohibits fraudulent transfers which occurred after July 1, 2002, under the Uniform Fraudulent Transfer Act ("UFTA") codified in O.C.G.A. § § 18–2–70, *et seq.* Under UFTA, a court may set aside transfers made "with actual intent to hinder, delay, or defraud" creditors and transfers that are indicative of fraud even if actual fraud is not proven.[10] 11 U.S.C. § 544; O.C.G.A. §§ 18-2-70, *et seq.*

Under § 544 "a trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim…" Thus, § 544 allows the trustee to avoid any transfer that is avoidable under the applicable state's fraudulent transfer laws. In Georgia, fraudulent transfers are governed by O.C.G.A. § § 18-2-70, *et seq.*, which allows a creditor to avoid certain transfers that occur during a four (4) year look back period prior to the filing of the bankruptcy. O.C.G.A. § 18-2-79. Specifically, § 18-2-75 allows a trustee to avoid any transfer made by a debtor where the debtor did not receive a reasonably equivalent value in exchange for the transfer and the debtor was insolvent or became insolvent as a result of the transfer. It is O.C.G.A. § 18-2-75, as made

---

[9] Pursuant to 11 U.S.C. § 544(b), "a trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim...."
[10] 11 U.S.C. § 548 allows a trustee to avoid certain transfers that occur during a two (2) year look back period prior to the filing of the bankruptcy. Since the trustee has not alleged that any of the transfers in question occurred within 2 years prior to the filing of this case, avoidance under § 548 is not applicable.

applicable to bankruptcy proceedings by 11 U.S.C. § 544, that provides the basis for the Trustee's motion.

    *ii.*   *Judicial Estoppel*

The Trustee contends that Speciale and the Debtor are barred from asserting Speciale's ownership of the property based on the doctrine of judicial estoppel. "Judicial Estoppel is an equitable doctrine that precludes a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." *Nettles v. State Farm Fire and Cas. Co.,* No. 4:10-CV-106, 2011 WL 2462556, at *3 (M.D.GA. June 17, 2011) (quoting *Barger v. City of Cartersville, Ga.*, F. 3d 1289, 1293 (11th Cir. 2003)). The purpose of the doctrine is "to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (internal citations omitted). Hence, judicial estoppel is an equitable doctrine that is applied at the discretion of the court. *Id.* at 750.

In *New Hampshire v. Maine*, the Supreme Court discussed three factors that courts typically consider when invoking judicial estoppel: "(1) whether the present position is clearly inconsistent with the earlier position; (2) whether the party succeeded in persuading a court to accept the earlier position, so that judicial acceptance of the inconsistent position in a later proceeding would create the perception that either the first or second court was misled; and (3) whether the party advancing the inconsistent position would derive an unfair advantage." *Robinson v. Tyson Foods, Inc.*, 595 F. 3d 1269, 1273 (11th Cir. 2010)(citing *New Hampshire*, 532 U.S. at 750-751). However, these factors are not exhaustive and a court may consider additional factors that are relevant to a specific circumstance. *New Hampshire*, 532 U.S. at 751.

10

The Eleventh Circuit has also weighed in on the issue of judicial estoppel.[11] The seminal case in the Eleventh Circuit on the requirements of judicial estoppel is *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282 (11th Cir. 2002). *Robinson*, 595 F.3d at 1273 (11th Cir. 2010). In *Burnes*, the Eleventh Circuit, applying the standards established by the Supreme Court in *New Hampshire v. Maine*, recognized two primary factors that a court should consider when applying judicial estoppel. "First, it must be shown that the allegedly inconsistent positions were made under oath in a prior proceeding. Second, such inconsistencies must be shown to have been calculated to make a mockery of the judicial system." *Burnes*, 291 F. 3d at 1285 (quoting *Salomon Smith Barney, Inc. v. Harvey, M.D.*, 260 F. 3d 1302, 1308 (11th Cir. 2001)). These factors, however, are not exhaustive and a court should tailor its analysis to match the circumstances of each particular case. *See id*, *see also Nettles*, 2011 WL 2462556, at *3.

1. Inconsistent Positions Under Oath

The Trustee alleges that Speciale and the Debtor have a taken position is this adversary proceeding that is inconsistent with the position taken in Speciale's 2007 divorce proceeding. In the instant matter, Speciale and the Debtor claim that at all times relevant to this adversary proceeding Speciale has been the owner of 174 and 191 Buffalo Road. At the hearing and in numerous other documents contained within the record, the Debtor and Speciale claim that Debtor's 2007 transfer of 174 and 191 Buffalo Road to Speciale was merely returning the properties to Speciale. Both Debtor and Speciale assert that the property was transferred from Speciale to the Debtor in 2005 for "safe keeping." (Affidavit of Dennis D. Speciale p. 4, ECF No.

---

[11] *See e.g. Robinson v. Tyson Foods, Inc.,* 594 F.3d 1269, 1273 (11th Cir. 2010); *Barger v. City of Cartersville*, 348 F. 3d 1289 (11th Cir. 2003); *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282 (11th Cir. 2002).

11

13).This 2005 transfer was an attempt by Speciale and the Debtor to prevent Speciale's wife from acquiring an interest in the properties during the Speciale divorce.[12]

During the Speciale divorce, Speciale and the Debtor both asserted that the 174 and 191 Buffalo Road properties belonged to the Debtor. (Stmt. of Uncontested Facts ¶¶ 1-15) In fact, the Debtor filed a Motion to Intervene in the Speciale Divorce in order to assert her ownership of both properties and the divorce court granted the Debtor's Motion to Intervene. (Stmt. Uncontested Facts ¶¶ 7-13). Gregg also filed a sworn affidavit in support of her motion for summary judgment in which she stated that "[a]t the time my son deeded both tracts to me, I did not pay him any monies, as it was simply a return of my property to me, which had been placed in his name only for convenience . . ." (Gregg Dep. Ex. 22; Stmt Uncontested Facts ¶ 10). In that same affidavit Gregg further stated that "I always considered it to be my property and the period of time he held the deed was for convenience purposes only." (Gregg Dep. Ex. 22; Stmt Uncontested Facts ¶ 10). These two examples are only a small portion of the instances during the Speciale divorce in which Debtor asserted her sole ownership of the Marion County properties. When considering the evidence of the Speciale divorce contained within the record it is clear to the Court that the Debtor and Speciale took the legal position that at the time of the divorce, and at all times prior to the divorce, Gregg was the sole owner of 191 and 174 Buffalo Road.[13]

---

[12] Both Debtor and Speciale asserted at the hearing that Speciale's wife had forged Speciale's signature on certain documents in an attempt to sell both 174 and 191 Buffalo road prior to Speciale's filing for divorce. Additionally, both Speciale and the Debtor claim that the 2005 transfer of the property from Speciale to the debtor was an attempt to prevent further attempts by Speciale's estranged wife to sell the properties. Even if true, those circumstances would not justify false affidavits to the Superior Court.

[13] In Debtor's divorce case, which was on going during the Speciale Divorce, the Judge found that because Speciale asserted no claim to the property in Marion County and because debtor had intervened in the Speciale Divorce to assert her ownership of the Marion County property, that Alicia Gregg was the owner of 191 and 174 Buffalo Road and that the properties would considered part of the Gregg's martial estate. (Gregg Dep. Ex. 19)

12

However, since the Speciale divorce the Debtor and Speciale have had a change of heart regarding who owned 174 and 191 Buffalo Road at the time of the Speciale Divorce. Contrary to the claims made in the Speciale Divorce, Speciale and the Debtor have emphatically asserted in the instant adversary proceeding that 174 and 191 Buffalo Road belonged to Speciale and that the Debtor's 2007 transfers of the property to Speciale were merely returning his property to him. For example, in the current case, Speciale filed an *Affidavit of Dennis Speciale*,[14] in which he asserted under oath that the 2007 transfer of 174 and 191 Buffalo road was "not made for valuable consideration as property[sic] was already [his] since 1996 and was being returned to him. . ." (Aff. Speciale p. 4). Speciale has also claimed in this case that "the acreage in question was the property belonging to [Speciale] in 2005 and transferred back to him in February 2007 . . ." and that "the Debtor was simply returning property that already belonged to the Defendant since 1996-1998. . ." (Response to Trustee First Mot. Summ. J., ECF No. 39).

Additionally, at oral argument both Speciale and the Debtor reiterated that Speciale had always been the owner of the property and that the 2005 transfer from Speciale to the Debtor had been an attempt to prevent Speciale's wife, Melissa Speciale, from selling the property. In addition to being inconsistent with what was argued in the Speciale divorce, this is also in contrast to what the Massachusetts divorce court determined during the Debtor's own divorce. In the Debtor's divorce, the court determined that because Speciale did not assert a claim to the Marion County property and the Debtor had intervened in the Speciale divorce to assert her claim to the Marion County property, that Debtor was the owner of 174 and 191 Buffalo Road. (Gregg Dep. Ex 19).

---

[14] Although styled as an affidavit, the *Affidavit of Dennis D. Speciale* contains sub-headings titled "Answer to Complaint to Avoid Transfers," "Motion to Dismiss," "Motion for More Definite Statement," and "Answer." From these sub-headings it appears to the Court that the *Affidavit of Dennis Speciale* is meant to serve as an Answer required under Federal Rule of Bankruptcy Procedure 7012(a).

13

Thus, it is surprising to the Court that Debtor and Speciale now contend that Speciale was the actual owner of 174 and 191 Buffalo Road at the time of the Speciale divorce.

Based on the evidence before the Court it is clear that the Debtor and Dennis Speciale have taken a position in this proceeding that is inconsistent with the position taken by Speciale and Debtor during the Speciale divorce and Gregg divorce. Specifically, the contention that Speciale has been the owner of 174 and 191 Buffalo Road at all times relevant to this hearing is the complete opposite of what was asserted by Debtor and Speciale during the Speciale divorce where they asserted that Debtor had always been the owner of the property. In the Speciale divorce, Speciale and Debtor took a legal position designed to prevent Melissa Speciale from claiming an interest in the property and have now taken an inconsistent position in the current case in an attempt to bar the Trustee from asserting a claim to 191 and 174 Buffalo Road.

2. Mockery of the Judicial System

To prevail on a theory of judicial estoppel the party seeking to assert the doctrine must also show that the inconsistent positions were "calculated to make a mockery of the judicial system."*Burnes*, 291 F. 3d at 1285; *see also Nettles*, 2011 WL 2462556 at *3. Making such a determination requires the court to consider the intent of the party that is asserting the inconsistent positions. *See id.* When considering a party's intent for the purpose of judicial estoppel, the Court "requires intentional contradictions, not simple error or inadvertence." *Robinson*, 595 F. 3d at 1275 (internal quotations omitted); *see also Barger v. City of Cartersville, Ga.,* 348 F. 3d 1289, 1294 (11th Cir. 2002) ("for purposes of judicial estoppel, intent is a purposeful contraction-not simple error or inadvertence"). "Deliberate or intentional manipulation 'can be inferred from the record[] where the debtor has . . . motive for concealment.' " *Nettles,* WL 2462556 at * 4 (quoting *Barger*,

14

348 F.3d at 1294). In the Chapter 7 context the debtor has a financial motive to divert or conceal certain assets, which might otherwise be property of the estate, prior to filing the petition so as to prevent the trustee from liquidating those assets to pay creditors. *Barger*, 348 F. 3d at 1294; *see also Nettles*, 2011 WL 2462556 at *3.

Here, it is clear to the Court that the inconsistent positions taken by Speciale and the Debtor are calculated and intentional, and are not "simple error or inadvertence." *Robinson*, 595 F. 3d at 1275. Speciale and the Debtor's actions are explained by motive in each case. First, in the Speciale divorce, Speciale and the Debtor sought to prevent Speciale's wife from claiming an interest in and receiving an equitable division of 174 and 191 Buffalo Road. To do so, both Speciale and the Debtor claimed the properties belonged solely to the Debtor and were not martial assets subject to equitable distribution. (Gregg Dep. Ex. 20-24). Now, in the current case, Speciale and the Debtor seek to prevent the Trustee from recovering the properties. To that end, Speciale and the Debtor now assert that despite the transfer from Speciale to the Debtor in 2005, the claims made by them in the Speciale divorce, and the Speciale divorce Court and Gregg divorce Court's finding that the Debtor was the sole owner of the property, that 191 and 174 Buffalo Road belonged to Speciale all along. Their inconsistent positions are explained by a common motive; to defeat a third party's claim to 174 and 191 Buffalo Road.

Accordingly, the Court finds that Speciale and Debtor are judicially estopped from asserting that 174 and 191 Buffalo Road belonged to Speciale prior to the time of the 2007 transfer. It is obvious to the Court that the Debtor and Speciale have deliberately taken inconsistent legal positions in the Speciale divorce and in the current case in an attempt to manipulate this Court into preventing the Trustee from recovering 174 and 191 Buffalo Road. Speciale and the Debtor have vigorously asserted to this Court that 174 and 191 Buffalo Road always belonged to Speciale,

15

despite having claimed the exact opposite in the Speciale divorce. The Court finds that Speciale was not the owner of 174 and 191 Buffalo road prior to the 2007 transfer from the Debtor, and that Speciale and the Debtor are judicially estopped from claiming otherwise.

    *iii.    Fraudulent Transfer Claims*

Section 544 of the Bankruptcy Code allows the trustee to avoid any transfer that is avoidable under the applicable state's fraudulent transfer laws. In this case, the Trustee seeks to use the Uniform Fraudulent Transfer Act ("UFTA") as enacted by Georgia, O.C.G.A. § 18–2–70, et seq., as the basis for avoiding the 2007 transfers. Under Georgia's version of the UFTA, a creditor whose claim existed at the time of the transfer may avoid a transfer if the debtor did not receive reasonably equivalent value in exchange for it and the debtor was insolvent at the time or became insolvent as a result of the transfer. O.C.G.A. § 18–2–75(a). Accordingly, to have the 2007 transfers set aside the Trustee must show that: (1) There was a transfer of property; (2) the debtor did not receive a reasonably equivalent value in exchange for the property; and (3) the Debtor was insolvent at the time of the transfer or became insolvent as a result of the transfer. O.C.G.A. § 18-2-75(a).

First, the Debtor and Speciale argue that Speciale was always the owner of the property and therefore there was never any transfer to avoid. As we discussed above Speciale and Debtor are judicially estopped from claiming Speciale was the owner of 174 and 191 Buffalo road prior to the 2007 transfers. Accordingly, the Trustee has met the initial element of § 18-2-75(a), and established a transfer.

Second, the Debtor and Speciale do not dispute the Trustee's assertion that the Debtor received less than reasonably equivalent value for the 2007 transfers. In fact, Speciale admitted in his

16

answer that he did not give valuable consideration in exchange for the transfers.[15] (Speciale Aff. pp 2,4). Thus, the Court finds the Trustee has met the second element of O.C.G.A. § 18-2-75 and established that the Debtor did not make the 2007 transfers in exchange for reasonably equivalent value.

Finally, The Trustee argues the Debtor was insolvent at the time of the 2007 transfers or became insolvent as result of those transfers. For the purposes of O.C.G.A. § 18–2–75, a debtor is insolvent "if the sum of the debtor's debts is greater than all of the debtor's assets, at a fair valuation" or if the debtor "is generally not paying his or her debts as they become due." O.C.G.A. § 18–2–72(a) and (b). The term "Assets" under the UFTA does not include "[p]roperty to the extent it is encumbered by a valid lien." O.C.G.A. § 18–2–71(2).  The term "Debts" under the UFTA does not "include an obligation to the extent it is secured by a valid lien on property of the debtor not included as an asset." O.C.G.A. § 18–2–72(e). Therefore, for the purposes of its determination the Court will not consider any property of the debtor that was subject to a valid lien at the time of the 2007 transfers.

The evidence establishes that on November 19, 2007, the date of the allegedly fraudulent transfers, the Debtor had, at a minimum, approximately $179,000 in liabilities.[16] (Gregg Dep. pp 156-160, Stmt. Uncontested Facts ¶¶ 27, 33). These liabilities were comprised primarily of a $156,000 debt owed to Alonzo Gregg, Debtor's ex-husband, and approximately $23,000 in

---

[15] On page 4, in paragraphs 10 and 11 of his *Affidavit of Dennis Speciale,* Speciale stated the following "Defendant admits that the transfers described in paragraphs 7 & 8 were not made for valuable consideration as property was already Defendant's since 1996 and was being returned to him due to fraudulent use of Defendant's name and forged signature by former spouse."

[16] These liabilities do not include a debt of approximately $115,000 owed to Wells Fargo that was secured by the debtor's home and approximately 10 acres, which is also located at 174 Buffalo Road.

17

cumulative credit card debt.[17] On that same date, the Debtor had a total of approximately $261,000 in assets, which were not encumbered by a valid lien. These assets consisted of approximately $26,000 in bank or credit union accounts, $213,000 in real estate, and $22,000 in personal property.[18]

This total number, however, is misleading. When considering a fraudulent transfer the test is whether "the debtor was insolvent at the time or the debtor became insolvent a result of the transfer or obligation." O.C.G.A. § 18-2-75(a). Under O.C.G.A. § 18-2-72(d), assets "do not include property that has been transferred, concealed, or removed with intent to hinder, delay or defraud creditors or that has been transferred in a manner making the transfer voidable under this article." Therefore, neither 191 nor 174 Buffalo Road, which were transferred to Speciale on November 19, 2007, can be included as assets when determining insolvency because they serve as the basis for this action. When the value of 191 and 174 Buffalo Road is subtracted from her assets, the total drops to $67,000. This number is far less than the $179,000 in total liabilities she had at the time of the transfer. Accordingly, the Court finds that the Debtor was insolvent on November 19, 2007, the day she transferred 174 and 191 Buffalo Road to Speciale.

Additionally, the Court finds that the Debtor was also insolvent as "a result of the transfer." O.C.G.A. § 18-2-75(a). Even if the Court were to consider the value of 174 and 191 Buffalo in the Debtor's total assets on the day of the transfer, it is obvious that the Debtor became insolvent the

---

[17] Alonzo Gregg, the Debtor's ex-husband filed a proof of claim in this matter of $187,000 which represents the value of the property he was supposed to receive based on an August 21, 2007, divorce judgment. At her deposition the Debtor agreed that as of November 2007 Alonzo Gregg had a claim against her as a result of the August 21, 2007, divorce judgment, but she asserted that the amount of the claim was $156,000. For the purposes of this opinion I value Alonzo Gregg's claim at $156,000.

[18] Debtor testified at her deposition that in November, 2007, the value of 191 Buffalo Road was $60,000, the value of 174 Buffalo Road was $134,000, the value of her New Mexico property was $1,000 and the value of her Maui Timeshare was $18,000-$20,000. (Gregg Dep. pp 155-160; Stmt. Uncontested Facts ¶¶ 32, 33). She also had approximately $26,000 in various bank accounts and $22,000 in personal property. (Stmt. Uncontested Facts ¶ 34). In total, these assets amount to $261,000

18

moment she transferred those properties to Speciale. At her deposition the Debtor stated that the value of 191 Buffalo Road was $60,000, and the value of 174 Buffalo Road was $134,000. (Gregg Dep. 155-156; Stmt Uncontested Facts at ¶ 32). By transferring those properties to Speciale her total assets fell to $67,000, which is less than the value of her debts on the date of the transfers. Thus, for the purposes of O.C.G.A. § 18-2-75(a) the debtor was insolvent as a result of transferring 174 and 191 Buffalo Road to Speciale. Based on the evidence presented, it is clear to the Court that on November 19, 2007, the Debtor was insolvent. Consequently, the transfer of 174 and 191 Buffalo Road from the Debtor to Speciale may be set aside under O.C.G.A. § 18-2-75.

    iv.    *Collateral Estoppel*

In addition to asserting that Speciale is judicially estopped from claiming to be the owner of 174 and 191 Buffalo Road prior to the 2007 transfers from Debtor, the Trustee also argues that Speciale is barred from making such a claim under the doctrine of collateral estoppel. "'In Georgia, the collateral estoppel doctrine precludes the re-adjudication of an issue that has previously been litigated and adjudicated on the merits in another action between the same parties or their privies.'" *Thomas Cnty. Bd. of Tax Assessors v. Thomasville Garden Ctr., Inc.*, 277 Ga. App. 591, 593 (Ga App. 2006) (quoting *Shields v. BellSouth Advertising & Publishing Corp.*, 273 Ga. 774, 777 (Ga 2001)). Since I have determined that Speciale is judicially estopped from asserting ownership of 174 and 191 Buffalo Road prior to the 2007 transfers, it is not necessary to decide whether collateral estoppel is applicable in this case.

## IV.   Conclusion

In conclusion, the Court finds that on November 19, 2007, the Debtor transferred 191 and 174 Buffalo Road to Speciale, and that these transfers were in violation of O.C.G.A. § 18-2-75.

19

As a result, the Trustee may avoid these transfers, as fraudulent pursuant to 11 U.S.C. § 544. Accordingly, the Court grants the Trustee's Motion for Summary Judgment and will enter an order in accordance with this Memorandum Opinion.